IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00115-RJC
(3:10-cr-00243-RJC-DCK-1)

| | | |
|---|---|---|
| AWNI SHAUAIB ZAYYAD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence which is filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Petitioner's § 2255 Motion to Vacate will be dismissed.

I.  BACKGROUND

   A.  Offense conduct

In July 2009, the Department of Homeland Security ("DHS") received a tip regarding the purported sale and distribution of counterfeit items in the Charlotte, North Carolina area which included Viagra and Cialis tablets. The DHS conducted undercover purchases in 2010 of what were later determined to be counterfeit Viagra and Cialis from one of the individuals believed to be involved, Essam Elasmar, who sold the pills out of a convenient store he managed in Charlotte. After being confronted by agents about the sale of the counterfeit pills, Elasmar agreed to work as a confidential informant in the investigation.

Elasmar contacted Petitioner in June of 2010, and ordered roughly 500 Viagra tablets at a cost of $4 a pill. The pills were packaged in a Ziploc bag and delivered by Petitioner to Elasmar

1

at his convenient store on June 24, 2010. After the sale was completed, Petitioner left the scene and Special Agent Boze with the DHS confirmed that Petitioner sold Elasmar over 500 Viagra pills.

On August 16, 2010, agents arranged for another purchase by Elasmar from Petitioner. On this occasion, Petitioner agreed to sell Elasmar a large quantity of Viagra and Cialis tablets for $4 each and deliver them to the convenient store. On the day of the scheduled meeting, agents followed Petitioner as he made his way from his home in Wilson, North Carolina, to the Charlotte area. After Petitioner entered Mecklenburg County, a police officer with the Charlotte Mecklenburg Police Department, upon request from Special Agent Boze, conducted a traffic stop of Petitioner's red minivan. A search of Petitioner's vehicle revealed a hidden cache of pills that included over 600 Viagra and Cialis tablets which Boze noted appeared to have different shades of color. The tablets were sent by Boze to drug manufacturers Eli Lilly, Inc. (Cialis) and Pfizer (Viagra), and also to a chemist with the Federal Drug Administration ("FDA"), JaCinta Batson. After the manufacturers and the FDA examined the pills, it was determined that the tablets were counterfeit. (Criminal Case No. 3:10-cr-00243, Doc. No. 80: Tr. Transcript).

B. Petitioner's conviction and sentence

On December 13, 2011, Petitioner was named as the sole defendant in a five-count superseding bill of indictment returned by the Grand Jury in this District. The indictment charged Petitioner with conspiracy to traffic and attempting to traffic counterfeit Cialis and Viagra tablets, and selling and dispensing the tablets with knowledge that they were counterfeit and with intent to defraud or mislead purchasers. (Id., Doc. No. 38: Superseding Indictment).[1] Prior to

---

[1] Petitioner's first indictment charged seven counts and proceeded to a jury trial on December 8, 2011, and the Court declared a mistrial after the jury failed to reach a unanimous verdict.

trial, the Government filed a motion *in limine* to exclude evidence "through cross-examination or otherwise" pertaining to the alleged existence of a "diversion market" or a "gray market" for genuine tablets of Viagra and Cialis, until such time that Petitioner could demonstrate that the evidence was relevant, and that the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time . . ." (Id., Doc. No. 45: Government's Motion *in Limine*) (internal citation omitted). Petitioner filed a response opposing the Government's motion and argued that evidence that the allegedly counterfeit tables may have emanated from a "gray market" could support the defense's theory that Petitioner did not know that the tablets were counterfeit. Petitioner maintained that if evidence could be adduced at trial that the pills that he was charged with selling were "gray goods" or the product of production overruns from legitimate sources, then he could establish a possible affirmative defense, and to prohibit the introduction of such evidence violated the Due Process Clause of the Fifth Amendment. (Id., Doc. No. 49: Petitioner's Response in Opposition at 1). The Court held a hearing on the Government's motion *in limine* and concluded that it should be granted because there was no genuine issue as to whether the Viagra or Cialis tablets were counterfeit and that gray market evidence was therefore irrelevant to Petitioner's case, and the Court ordered that Petitioner could not cross-examine with respect to gray market evidence. (Id., Doc. No. 55: Tr. of Motions Hearing at 2-3) (citing Rules 401 and 403 of the Federal Rules of Evidence).

  During Petitioner's trial, the Government presented evidence from special agents from the DHS regarding the two controlled purchases of Viagra and Cialis which Elasmar arranged with Petitioner in 2010. The Government also presented testimony from experts from Pfizer, Eli

Lilly, Inc., and the FDA that in their opinion the tablets that were seized by Special Agent Boze and subjected to testing, were counterfeit based on their appearance and on the results of the chemical testing of a sample of the pills. After the Government rested its case-in-chief, the Court denied Petitioner's motion for judgment of acquittal and Petitioner then expressed that he would not testify in his own defense and his counsel informed the Court that he would not present evidence. (Id., Doc. No. 79: Tr. of Sentencing at 225-226).

Petitioner was found guilty of the five counts in his superseding bill of indictment and he was sentenced to five, concurrent terms of 24-months' imprisonment and a 24-month term of supervised release. (Id., Doc. No. 68: Judgment). Petitioner appealed from his judgment to the United States Court of Appeals for the Fourth Circuit.

C. Appeal

On appeal, Petitioner challenged the ruling on the motion *in limine* arguing that he should have been allowed to introduce evidence regarding a "gray market" or "diversion market" for the Viagra and Cialis tablets. United States v. Zayyad, 741 F.3d 452 (4th Cir. 2014).[2] Petitioner maintained that the evidence was relevant to the issue of whether he actually believed that the tablets he was selling were genuine pills. In assessing this argument, the Court first noted that Petitioner misconstrued the ruling on the motion *in limine* because Petitioner was not prohibited "from introducing all evidence concerning a gray market." Id. at 458. The Court therefore confined its consideration to whether the limitation on Petitioner's right to cross-examine regarding any gray market evidence was an abuse of discretion, and observed that Petitioner

---

[2] In its opinion the Fourth Circuit noted that "[t]he term 'gray market good' refers to a good that is 'imported outside the distribution channels that have been contractually negotiated by the intellectual property owner.' Such goods are also commonly called 'parallel imports.'" Id. at 456 n.1 (quoting Kirtsaeng v. John Wiley & Sons, Inc., 133 S. Ct. 1351, 1379 n.9 (2013)).

4

never tried to introduce evidence during his case-in-chief regarding a gray market and "never raised the possibility of doing so, and never made any proffer regarding gray-market evidence to the district court." Id.

The Court noted that the Government carried the burden of proving beyond a reasonable doubt (1) that Petitioner knew that the pills were counterfeit under 18 U.S.C. § 2320(a), and (2) that in selling or dispensing the pills, Petitioner acted with intent to defraud or mislead consumers under 21 U.S.C. § 333(a)(2). Id. at 459-60. The Court found that Petitioner's "proposed cross-examination was irrelevant because it did not connect to the knowledge element of the charged offenses." Id. at 460. The Court rejected Petitioner's challenge to the limit on cross-examination after finding that the limitation was not an abuse of discretion.

The Court also dismissed Petitioner's claim that "forcing him to summon other evidence in support of his gray-market contention raises constitutional concerns" because it required him to choose between testifying in his own defense that he believed the pills were genuine or exercising his right to remain silent. Id. at 461. The Court reasoned that if he wanted to present evidence on the issue of gray-market goods then he had the obligation of raising this as an affirmative defense and he would naturally have to present evidence to support the defense through his own testimony. Id. at 460 ("If the defendant wants to present a theory or belief that might have justified his actions, then he must present evidence that he in fact relied on that theory of belief.") (internal citation omitted). In other words, "[t]hat the defendant faces a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." Id. at 461.

Petitioner further argued on appeal that the Government failed to present sufficient

5

evidence that Petitioner knew that the pills were counterfeit, explaining that he never provided a confession that the he knew the pills were not genuine and no one overheard him admit that the pills were counterfeit. Id. at 462. This argument was rejected after the Court summarized the evidence presented by the Government. Namely,

> The Government's circumstantial fact evidence allowed the jury to reasonably infer that the pills were counterfeit. The pills did not come with traditional packaging or materials, and came at a very low price, in enormous volumes, from sources that one would not normally expect to have legitimate pills. These facts would indicate that the pills were illegitimate. Zayyad also hid the pills in his van and evidently had help in destroying additional pill evidence at his home. The later attempt to conceal the pills further indicates awareness that the pills were unlawful.

Id. at 462-63.[3]

The Court also dismissed Petitioner's argument that evidence presented during his first trial that he informed agents that he believed the pills were genuine was of no consequence. The Court noted that these statements were mentioned during the first trial but not in the second, and "[e]ven had the statements appeared at the second trial, we would not decide differently." Id. at 464.

D. Section 2255 Proceeding

Petitioner's judgment was affirmed in all respects and he did not petition the Supreme Court for a writ of certiorari. In his § 2255 Motion to Vacate, Petitioner raises a claim of ineffective assistance of counsel contending that his counsel's failure to present evidence regarding a "gray-market" for the Viagra and Cialis tablets or to even make a proffer of such evidence to the Court caused him extreme prejudice. (3:14-cv-00115, Doc. No. 1: § 2255 Motion

---

[3] Alternatively, the Court found that the "jury could have reasonably concluded that Zayyad willfully blinded himself to the reality that the pills were counterfeit." Id. at 463.

6

at 5).

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment of the U.S. Constitution provides that a defendant is entitled to the effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a

reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

In this collateral proceeding, Petitioner maintains that his counsel was ineffective in failing to present evidence in his case-in-chief concerning the gray-market for Viagra and Cialis. (3:14-cv-00115, § 2255 Motion at 4-5). This argument is without merit. The Court noted in ruling on the motion *in limine* that cross-examination of Government witnesses on gray-market evidence could tend to confuse the jury and the testimony would be irrelevant. Petitioner countered that the evidence would be relevant because it could assist him in proving that he did not know that the tablets were counterfeit.

In upholding the limitation of cross-examination, the Circuit panel noted that the evidence of a gray-market for the tablets would indeed be irrelevant unless Petitioner himself offered evidence in his defense that he in fact believed the tablets were genuine. As previously discussed, Petitioner declined the opportunity to testify in his own defense after his motion for judgment of acquittal was denied therefore he personally abandoned his opportunity to address the jury and testify about his state of mind.

In the first trial, evidence was presented that Petitioner claimed during discussions with DHS agents that he believed the tablets were genuine. Petitioner could well have taken the stand

in his second trial and reiterated and bolstered his statements to law enforcement but he chose not to, and it is important to note that Petitioner, in this collateral proceeding, does not contend that his counsel dissuaded him or otherwise pressured him into not testifying. Rather, Petitioner's contention has been all along that this Court's decision to limit cross-examination placed him in the untenable position, in his estimation, of having to choose between testifying in his own defense or in exercising his right to remain silent before the jury. The Circuit panel rejected this very argument observing that a "defendant may struggle with how to attack an element that involves his own state of mind, particularly when he lacks contemporaneous evidence of that state of mind. But a defendant's rights 'would not be violated simply because he had to choose between not testifying and laying [the required] foundation.'" Zayyad, 741 F.3d at 461 (quoting United States v. Kokenis, 662 F.3d 919, 927 (7th Cir. 2011), cert. denied, 132 S. Ct. 2713 (2012)).

As the Supreme Court explained in Strickland, "the purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that criminal defendants receive a fair trial." 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. (internal citation omitted). In assessing Petitioner's argument in this § 2255 proceeding, this Court must avoid "the distorting effects of hindsight . . . and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." Id.

On appeal, the Court noted that the Government's evidence was sufficient for the jury to

9

find that Petitioner knew that the tablets were counterfeit: the Cialis pills were different shades of color as were the Viagra pills, the pills were sold in large quantities far below the market value and delivered in Ziploc bags, the pills were sold without a prescription, and Petitioner concealed the pills in his van and arranged clandestine meetings to sell the pills. This is the Government's evidence. Petitioner had every right to refute this evidence through his own direct testimony in an effort to establish his state of mind, or in other words, to present an affirmative defense that he had no knowledge that the pills were counterfeit. However, he declined to testify in his own defense.

In sum, Petitioner had the right to testify to his state of mind but he declined to do so and he makes no claim that his counsel prevented him or otherwise counseled him to exercise his right to remain silent and not testify. Accordingly, the Court finds that based on the evidence presented at trial, Petitioner has failed to demonstrate that his counsel's performance was objectively unreasonable or that he was prejudiced by such performance.

IV.     CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 Motion is without merit and it will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's § 2255 Motion to Vacate is **DISMISSED with prejudice**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: December 11, 2015

*[signature]*

Robert J. Conrad, Jr.
United States District Judge